

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

THE BI-STATE DEVELOPMENT
AGENCY OF THE MISSOURI-
ILLINOIS METROPOLITAN
DISTRICT,

        Appellant,

v.

ALISA WARREN, THE MISSOURI
COMMISSION ON HUMAN RIGHTS,
and SCOTT GUSTAFSON,

        Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

WD81922

OPINION FILED:
May 21, 2019

**Appeal from the Circuit Court of Cole County, Missouri
The Honorable Jon E. Beetem, Judge**

**Before Division Four:** Karen King Mitchell, Chief Judge, and
Victor C. Howard and Alok Ahuja, Judges

The Bi-State Development Agency of the Missouri-Illinois Metropolitan District, doing

business as Metro, Metro Transit, and MetroLink, (Bi-State) appeals from a judgment dismissing

its petition for writs of mandamus and prohibition and *de novo* judicial review of a right-to-sue

letter issued to Scott Gustafson by the Missouri Commission on Human Rights (MCHR). Bi-State

argues that the circuit court erred in dismissing its petition because: (1) the MCHR failed to abide

by a settlement agreement involving the same allegations of discrimination (Point I); (2) the MCHR lacked jurisdiction over Bi-State due to its interstate compact status (Point II); (3) the court was required to conduct an evidentiary hearing (Point III); (4) the MCHR was equitably estopped from challenging Bi-State's right to seek judicial review because the right-to-sue letter stated that any party aggrieved by issuance of the letter had a right to seek such review (Point IV); and (5) the court improperly relied on facts not alleged in Bi-State's petition (Point V). Finding that dismissal was appropriate under *State ex rel. Tivol Plaza, Inc. v. Mo. Commission on Human Rights*, 527 S.W.3d 837 (Mo. banc 2017), we affirm.

## Background[1]

Gustafson is blind and uses a guide dog to navigate. Gustafson lives in the City of St. Louis and relies on public transportation when he travels; he is a regular customer of Bi-State.[2]

In 2006, Gustafson filed both an initial and an amended Complaint of Discrimination with the MCHR (the 2006 complaint), alleging that Bi-State had violated the Missouri Human Rights Act (MHRA) by denying him access to its public transit services based on his disability. Gustafson alleged that, on or about October 10, 2006, Bi-State had discriminated against him by requiring him to seek out a ticket agent to purchase tickets. Gustafson also alleged that, on October 10, 2006, "prior and continuing," Bi-State had discriminated against him on the basis of his disability by passing by him at bus stops, not calling out stops, and not locating ticket and validation machines in the same location within each station.

---

[1] We accept as true all well-pleaded facts in the petition and give them "their broadest intendment." *Bray v. Mo. Dep't of Corr.*, 498 S.W.3d 514, 517 (Mo. App. W.D. 2016). However, "[c]onclusory allegations of fact and legal conclusions are not considered in determining whether a petition states a claim upon which relief can be granted." *Id.* at 518 (quoting *Hope Acad. Corp. v. Mo. State Bd. of Educ.*, 462 S.W.3d 870, 874 (Mo. App. W.D. 2015)).

[2] Bi-State was created in 1949 by an interstate compact under Missouri and Illinois law and was approved by the U.S. Congress pursuant to the Compact Clause of the U.S. Constitution. Bi-State's purpose is to provide a unified mass transportation system for the bi-state region.

In June 2008, the MCHR found probable cause to credit Gustafson's allegations that he was denied service due to his disability and that he was not allowed equal services due to his disability.[3]  Following an administrative proceeding initiated by the MCHR, Bi-State and the MCHR executed a settlement agreement in September 2011 resolving those allegations. Paragraph 11 of the settlement agreement stated, in pertinent part, that the "MCHR will not proceed with any administrative or legal action on behalf of [Gustafson] with respect to any matter raised or which could have been raised by [him] prior to the date of this Agreement."  In Paragraph 13 of the agreement, the MCHR, on its behalf and on behalf of Gustafson, released Bi-State

> from any and all charges, claims, suits, demands, debts, liens, liabilities, costs, expenses, actions, and causes of action, of every kind and nature, whether known or unknown, suspected or unsuspected, that [Gustafson] had, now has, or which he may have against [Bi-State] arising out of, related to or based upon any facts or events which occurred on or prior to the date of this Agreement, including but not limited to, any charge, claim, suit or action arising under or relating to the full and equal use and enjoyment of public places of accommodation, including, without limitation, the MHRA, § 213.065, et seq.

Although Gustafson participated in the settlement discussions, he did not personally intervene in the administrative action or sign the settlement agreement, nor did he challenge it.

In April 2014, Gustafson filed another Complaint of Discrimination, which he amended in November of that year (the 2014 complaint).  He alleged multiple violations of the MHRA by Bi-State, including buses failing to pick him up at designated stops on the following dates: December 26, 2013; June 13, 2014; and August 5, 2014.  He also alleged that Bi-State failed to provide assistive technology on its website or at ticket and transfer machines, adequate markers at bus stops, and audible announcements about routes, transfer points, and stops.

---

[3] The MCHR found no probable cause to credit Gustafson's allegations that he was not able to purchase tickets at ticket machines due to his disability and that Bi-State failed to accommodate his disability.

On November 30, 2015, the MCHR issued a right-to-sue letter to Gustafson. The letter stated, "This notice of right to sue is being issued as required by Section 213.111.1, RSMo, because it has been requested in writing 180 days after filing of the [2014] complaint. Please note that administrative processing of this complaint, including determination of jurisdiction, has not been completed." The letter advised Gustafson that the MCHR was administratively closing the case and terminating all MCHR proceedings regarding his 2014 complaint. The letter also stated, "if any party is aggrieved by this action of the MCHR, that party may appeal the decision by filing a petition under § 536.150 of the Revised Statutes of Missouri in the . . . circuit court of Cole County."

On December 23, 2015, Gustafson filed a lawsuit in St. Louis County, alleging Bi-State violated the MHRA.[4] Seven days later, Bi-State filed the present lawsuit in the Circuit Court of Cole County, seeking preliminary and permanent writs of mandamus and prohibition against the MCHR and its Executive Director Alisa Warren and *de novo* judicial review. The MCHR, Warren, and Gustafson moved to dismiss Bi-State's petition for failure to state a claim upon which relief can be granted under Rule 55.27(a)(6).[5] While the motions to dismiss were pending, Bi-State moved for leave to file an amended petition. The court granted Bi-State leave to amend and issued preliminary writs of mandamus/prohibition to the MCHR and Warren, requesting they file a pleading to the amended petition and serve the pleading on Bi-State.[6]

---

[4] At oral argument, we were informed that Gustafson's suit was removed to the United States District Court for the Eastern District of Missouri and that the federal court dismissed Gustafson's MHRA claims against Bi-State on the basis that, as an entity created by interstate compact, Bi-State is not subject to the MHRA. Gustafson reportedly continues to litigate various federal claims. Although Gustafson suggested that the issues presented here may now be moot, he also acknowledged that the dismissal of the MHRA claim might be raised on appeal.

[5] All rule references are to the Missouri Supreme Court Rules (2016).

[6] The motions to dismiss were directed to Bi-State's original petition. After the motion court granted Bi-State leave to amend its petition, the court deemed the motions directed at the original petition to be responses to the amended petition.

Bi-State's amended petition requested a writ of mandamus requiring the MCHR and Warren to withdraw Gustafson's right-to-sue letter, a writ of prohibition to prevent the MCHR and Warren from issuing another right-to-sue letter against Bi-State on Gustafson's behalf, and *de novo* judicial review of the MCHR's decision to issue a right-to-sue letter based on the 2014 complaint. Bi-State offered three reasons the writs of mandamus and prohibition should issue: (1) as the creation of an interstate compact, Bi-State is not subject to the MHRA; (2) the MCHR had an obligation to determine its authority and jurisdiction before issuing the right-to-sue letter; and (3) the allegations in the 2014 complaint mirror those in the 2006 complaint, and those allegations were resolved by the 2011 settlement agreement.[7]

Thereafter, the circuit court indicated its intention to rule on the motions to dismiss and asked the parties to submit proposed judgments. Bi-State objected, claiming that it had the right to offer evidence, including documents showing that the MCHR had found no probable cause to support some of the allegations in the 2006 complaint and an internal email indicating that MCHR personnel tasked with investigating the 2014 complaint were aware of the 2011 settlement agreement. Bi-State argued that this evidence was sufficient to raise the question of whether the MCHR's decision to issue the right-to-sue letter was unlawful, unreasonable, arbitrary, capricious, or involved an abuse of discretion. Also in support, Bi-State cited a recent decision by the Eastern District of this court holding that the MHRA did not apply to Bi-State because it is an interstate compact entity.

The circuit court rejected Bi-State's arguments and entered judgment on February 9, 2018, granting the MCHR's motion to dismiss Bi-State's amended petition. The court concluded that

---

[7] While the 2006 and 2014 complaints may contain overlapping allegations—an issue we need not decide—the 2014 complaint, which was attached to Bi-State's amended petition, clearly contains allegations of discrimination occurring well after the date of the settlement agreement, and "[a]n exhibit to a pleading is a part thereof for all purposes." § 509.130, RSMo (2018).

5

the MCHR had properly issued the right-to-sue letter and closed its administrative proceeding. Bi-State filed a motion for new trial or motion to reconsider, again arguing that it had the right to present evidence. On June 6, 2018, the circuit court entered an amended judgment dismissing Bi-State's amended petition with prejudice. The circuit court based its decision on three facts, which the court found to be undisputed: (1) Gustafson filed a complaint with the MCHR; (2) the MCHR did not render a decision on Gustafson's complaint within 180 days of its filing; and (3) Gustafson requested a right-to-sue letter. On those facts, the circuit court concluded that mandamus would not lie. Bi-State appeals.

**Standard of Review**

"An appeal will lie from the denial of a writ petition when a lower court has issued a preliminary order in mandamus but then denies a permanent writ." *Tivol Plaza*, 527 S.W.3d at 841 (quoting *U.S. Dep't of Veterans Affairs v. Boresi*, 396 S.W.3d 356, 358 (Mo. banc 2013)). "An appellate court reviews the denial of a petition for a writ of mandamus for an abuse of discretion. An abuse of discretion in denying a writ occurs when the circuit court misapplies the applicable statutes." *Id.* (quoting *Boresi*, 396 S.W.3d at 359). But we review questions of law *de novo*. *Laut v. City of Arnold*, 491 S.W.3d 191, 196 (Mo. banc 2016). Thus, we review *de novo* the legal question of whether the court may direct the MCHR to determine its authority or jurisdiction to process a complaint before issuing a right-to-sue letter when the 180-day window following the complaint has passed and the complainant requests a right-to-sue letter. *See Tivol Plaza*, 527 S.W.3d at 841 (Court reviewed *de novo* legal question of whether statute permitted the circuit court to direct the MCHR to continue to process a complaint once the MCHR has issued a right-to-sue letter after 180 days had passed).

6

Likewise, "[w]e review the dismissal for failure to state a claim upon which relief can be granted *de novo*." *Jordan v. Bi-State Dev. Agency*, 561 S.W.3d 57, 59 (Mo. App. E.D. 2018). In doing so, we review the petition "in an almost academic manner, to determine if the facts alleged meet the elements of a recognized cause of action." *Id.* (quoting *State ex rel. Henley v. Bickel*, 285 S.W.3d 327, 329 (Mo. banc 2009)). "In order to avoid dismissal, the petition must invoke substantive principles of law entitling plaintiff to relief and . . . ultimate facts informing the defendant of that which plaintiff will attempt to establish at trial." *Id.* (quoting *Otte v. Edwards*, 370 S.W.3d 898, 900 (Mo. App. E.D. 2012)) (internal quotations omitted).

## Analysis

Before analyzing Bi-State's points on appeal, we first consider the MCHR's authority to issue right-to-sue letters under the MHRA.

### I.     MHRA Right-to-Sue Letters

The MHRA authorizes the MCHR "[t]o receive, investigate, initiate, and pass upon complaints alleging discrimination." § 213.030.1(7).[8] "[A]ny person claiming to be aggrieved by an unlawful discriminatory practice may make, sign and file with the commission a verified complaint in writing, within one hundred eighty days of the alleged act of discrimination . . . ." § 213.075.1. After receiving the complaint, the agency shall "promptly investigate the complaint" to determine whether "probable cause exists for crediting the allegations of the complaint." § 213.075.3.

"[I]f the director determines after the investigation that probable cause exists for crediting the allegations of the complaint, the executive director shall immediately endeavor to eliminate the unlawful discriminatory practice . . . ." *Id.* If, however, the MCHR does not complete the

---

[8] All statutory references are to the Revised Statutes of Missouri (2015).

7

administrative processing of the complaint within 180 days from the date it was filed, the MHRA

allows the complainant to request a right-to-sue letter and then file suit in court:

> If, after one hundred eighty days from the filing of a complaint alleging an unlawful discriminatory practice . . . the commission has not completed its administrative processing and the person aggrieved so requests in writing, the commission *shall* issue to the person claiming to be aggrieved a letter indicating his or her right to bring a civil action within ninety days of such notice against the respondent named in the complaint.

§ 213.111.1 (emphasis added).[9]  Where a right-to-sue letter is issued after the 180-day period, the

MCHR loses authority to further process the complaint.  § 213.111.1 ("Upon issuance of this

notice, the commission shall terminate all proceedings relating to the complaint.")  As the Court

stated in *Tivol Plaza*,

> If 180 days have passed since the complaint was filed without the MCHR completing its administrative processing, and the [complainant] requests a right-to-sue letter, section 213.111.1 expressly requires the MCHR to issue the letter.  At that point, section 213.111.1 is explicit:  "Upon issuance of this notice, the commission shall terminate all proceedings relating to the complaint."

*Tivol Plaza*, 527 S.W.3d at 844.  With § 213.111.1 and *Tivol Plaza* in mind, we now turn to

Bi-State's claims of error on appeal.

## II.     Bi-State's Points on Appeal

Bi-State raises five points on appeal:  (1) the MCHR failed to abide by an earlier settlement

agreement involving the same allegations of discrimination, which deprives the MCHR of

authority over Gustafson's 2014 complaint (Point I); (2) the MCHR lacked jurisdiction over

Bi-State due to its interstate compact status (Point II); (3) the circuit court was required to conduct

---

[9] The only other provision in Missouri law that addresses right-to-sue letters under the MHRA is 8 C.S.R. § 60-2.025(7)(B)(6) which provides that when the MCHR "has not completed its administrative processing within one hundred and eighty (180) days from the filing of the complaint and the person aggrieved requests in writing a notice of the right to bring a civil action in state court, the executive director . . . will administratively close the complaint and issue the notice."

8

an evidentiary hearing (Point III); (4) the MCHR was equitably estopped from denying that Bi-State has a right to seek judicial review of the MCHR's decision to issue the right-to-sue letter (Point IV); and (5) the circuit court improperly relied on facts not alleged in Bi-State's amended petition (Point V).

**A. The MCHR did not exceed its authority in issuing the right-to-sue letter to Gustafson.**

In its first and second points on appeal, Bi-State claims that the circuit court erred in granting the MCHR's motion to dismiss because Bi-State stated a claim upon which relief could be granted in that its amended petition alleged that the MCHR acted arbitrarily and capriciously and abused its discretion by (1) refusing to abide by the 2011 settlement agreement (Point I) and (2) failing to conclude it lacked jurisdiction over Bi-State due to its interstate compact status (Point II). Bi-State petitioned for permanent writs of mandamus and prohibition to require the MCHR and Warren to withdraw the right-to-sue letter and to prevent them from issuing another right-to-sue letter based on the same allegations of discrimination. Bi-State also requested *de novo* judicial review of the MCHR's refusal to determine whether it had authority or jurisdiction to consider the 2014 complaint. Because both Point I and Point II challenge the circuit court's judgment on the basis that the MCHR lacked authority to issue the right-to-sue letter, we consider these points together.

Only two provisions in Missouri law address right-to-sue letters under the MHRA: § 213.111.1 and 8 C.S.R. § 60-2.025(7)(B)(6). Both provisions mandate that the MCHR provide a right-to-sue letter when (1) a complaint has been filed with the MCHR; (2) 180 days have passed since the filing of the complaint without the MCHR having completed its review; (3) and the complainant submits a written request for a right-to-sue letter. § 213.111.1; 8 C.S.R. § 60-2.025(7)(B)(6). Upon issuance of the right-to-sue letter, both provisions also require the

9

MCHR to terminate all proceedings relating to the complaint. § 213.111.1; 8 C.S.R. § 60-2.025(7)(B)(6). Nothing in the MHRA or its implementing regulations requires the MCHR to make any determination as to its authority or jurisdiction to issue a right-to-sue letter once the preconditions for issuance of such a letter under § 213.111.1 and 8 C.S.R. § 60-2.025(7)(B)(6) have occurred. Likewise, nothing in the statute or regulations allows the MCHR to withdraw a right-to-sue letter or to continue with administrative proceedings related to the complaint if more than 180 days have passed since the filing of the complaint, the complaint is still pending, and a right-to-sue letter has been requested.

For these reasons, in *Tivol Plaza*, the Court affirmed two circuit court judgments denying requests for permanent writs of mandamus relating to right-to-sue letters issued by the MCHR under § 213.111.1. The writs would have required the MCHR to withdraw the right-to-sue letters and determine whether the discrimination complaints were timely filed with the MCHR. *Tivol Plaza*, 527 S.W.3d at 845-46. In both underlying cases, the 180-day period had elapsed, and the Court concluded that the MCHR was required to issue the right-to-sue letters and terminate all administrative proceedings related to their complaints, even though the MCHR had not yet determined its jurisdiction. *Id.* at 845. "At that point, the MCHR had no statutory authority to make any findings of fact related to the complaints, implicitly or otherwise, including whether they had been timely filed." *Id.* And because "[t]he circuit court had no authority to direct the MCHR to perform an act the MHRA prohibits, . . . [the court] properly refused to issue writs directing the MCHR to do so." *Id.* at 839.[10]

_____

[10] Following the Court's decision in *Tivol Plaza*, the General Assembly amended § 213.075.1 in 2017 to state that the timely filing of an administrative complaint with the MCHR is "a jurisdictional condition precedent to filing a civil action under this chapter," and to expressly permit an employer to raise the defense of an untimely filed administrative complaint at any time, including in a civil action, "regardless of whether the employer asserted the defense before the commission."

10

*Tivol Plaza* dictates the same result here with respect to Bi-State's amended petition for permanent writs of mandamus and prohibition, and neither the 2011 settlement agreement nor Bi-State's status as an interstate compact entity changes that result.[11]  More than 180 days had passed since Gustafson filed the 2014 complaint with no resolution from the MCHR, and Gustafson requested a right-to-sue letter.  As mandated by § 213.111.1, the MCHR stopped processing the complaint and issued a right-to-sue letter indicating that it had not yet determined whether it had jurisdiction over the complaint.  Under these circumstances, Bi-State is not entitled to permanent writs of mandamus and prohibition.[12]

In the alternative, Bi-State claims that the motion court erred in dismissing its amended petition based on the reasoning of *Tivol Plaza* because Bi-State's petition included a claim for *de novo* judicial review, and *Tivol Plaza* did not involve such a claim.  The essence of Bi-State's argument is that the MCHR is required to determine its authority and jurisdiction before issuing a right-to-sue letter and, if it fails to do so, the circuit court is obligated to determine whether the MCHR had jurisdiction and authority.  Bi-State further argues that, if the circuit court finds that

---

[11] Bi-State is not seeking a decision from this court as to whether Bi-State is subject to the MHRA based on its status as an interstate compact entity.

[12] In support of its argument that it is entitled to a permanent writ, Bi-State cites *Farrow v. Saint Francis Medical Center*, 407 S.W.3d 579 (Mo. banc 2013).  There, the Court held that a writ of mandamus filed in circuit court pursuant to § 536.150 was the proper avenue to challenge the MCHR's jurisdiction to issue a right-to-sue letter. *Id.* at 589.  As the Court in *Tivol Plaza* noted, however, *Farrow* is distinguishable because, there, the 180-day period had not yet passed when the MCHR issued the right-to-sue letter. *State ex rel. Tivol Plaza, Inc. v. Mo. Comm'n on Human Rights*, 527 S.W.3d 837, 839 (Mo. banc 2017).  In *Tivol Plaza* and the instant case, unlike in *Farrow*, 180 days had elapsed, and the "MCHR was required to issue the right-to-sue letters to the employees and terminate all proceedings related to their complaints pursuant to section 213.111.1." *Id.* at 845.  According to the Court in *Tivol Plaza*,

> To the extent dicta in *Farrow* has been interpreted to permit the employer to raise this issue by filing a petition for writ of mandamus in the circuit court after the MCHR has issued a right-to-sue letter following the 180-day period, it has been misinterpreted.  These cases are governed by the provisions of section 213.111.1, which required the MCHR to cease all action on employees' complaints and issue a right-to-sue letter once that letter was requested more than 180 days after employees filed their complaints.

*Id.*

the MCHR did not have jurisdiction and authority, the court is to reverse the grant of the right-to-sue letter. We find this argument unavailing.

Bi-State bases its claim for *de novo* judicial review on § 536.150.1, which states, in pertinent part,

> When any administrative officer or body existing under the constitution or by statute . . . shall have rendered a decision which is not subject to administrative review, determining the legal rights, duties or privileges of any person, . . . and there is no other provision for judicial inquiry into or review of such decision, such decision may be reviewed by suit for injunction, certiorari, mandamus, prohibition or other appropriate action, and in any such review proceeding the court may determine the facts relevant to the question whether such person at the time of such decision was subject to such legal duty, or had such right, or was entitled to such privilege, and may hear such evidence on such question as may be properly adduced, and the court may determine whether such decision, in view of the facts as they appear to the court, is unconstitutional, unlawful, unreasonable, arbitrary, or capricious or involves an abuse of discretion; and the court shall render judgment accordingly, and may order the administrative officer or body to take such further action as it may be proper to require.

"To adequately plead a claim for judicial review under Section 536.150, 'an individual must plead facts that, if true, would show that he has been denied some legal right or entitlement to a privilege by an agency decision that was unconstitutional, unlawful, unreasonable, arbitrary, or capricious or involve[d] an abuse of discretion.'" *Spurgeon v. Mo. Consol. Health Care Plan*, 481 S.W.3d 604, 606 (Mo. App. W.D. 2016) (quoting *McIntosh v. LaBundy*, 161 S.W.3d 413, 416 (Mo. App. W.D. 2005) (internal quotations omitted)). For the reasons articulated *supra*, Bi-State did not plead facts that, if true, would show that it had been denied some legal right or privilege by an unlawful agency decision. *Tivol Plaza* makes clear that the MCHR has no obligation to make a determination regarding its jurisdiction or authority before issuing a right-to-sue letter, and if it has not made a determination before 180 days have passed and a right-to-sue letter is requested, the MCHR's decision to issue the right-to-sue letter is not only lawful but also mandated by the

12

MHRA and its implementing regulations. Thus, the facts alleged in the amended petition do not establish a cognizable claim for judicial review under § 536.150.[13]

Points I and II are denied.

### B.  Bi-State was not entitled to an evidentiary hearing.

For its third point, Bi-State asserts that the motion court erred in granting the MCHR's motion to dismiss because the court was required to conduct an evidentiary hearing under § 536.150. But where, as here, a party fails to adequately plead a claim under § 536.150, the right to an evidentiary hearing afforded by that statute is not available to the party. *See State ex rel. Petti v. Goodwin-Raftery*, 190 S.W.3d 501, 506 (Mo. App. E.D. 2006) (affirming dismissal despite appellants' claim that the motion court should have first conducted an evidentiary hearing, where the information in the petition was adequate to determine that appellants' claims lacked legal merit).

As we discussed *supra*, Bi-State did not plead facts that, if true, would show denial of a legal right or privilege by an unlawful agency decision because the MHRA required the MCHR to take the only administrative action at issue here—the issuance of a right-to-sue letter because more than 180 days had passed since the complaint was filed and Gustafson made a written request for a right-to-sue letter. Thus, Bi-State was not entitled to an evidentiary hearing on its claims.

Point III is denied.

---

[13] Judicial review under § 536.150 may be available where the party seeking relief alleges that the MCHR violated its authorizing statutes or regulations. *See State ex rel. Martin-Erb v. Mo. Comm'n on Human Rights*, 77 S.W.3d 600, 607-08 (Mo. banc 2002) (action for mandamus under § 536.150 was appropriate where employee made specific allegations regarding the MCHR's failure to comply with its regulations in determining whether there was probable cause to believe that race discrimination had occurred). Bi-State makes no similar argument in this case.

**C. The MCHR was not estopped from denying Bi-State's right to judicial review.**

In its fourth point, Bi-State claims that the circuit court erred in granting the MCHR's motion to dismiss because the MCHR is estopped from arguing that judicial review of its decision to issue the right-to-sue letter was unavailable to Bi-State where the letter stated that such review was available to any party aggrieved by the MCHR's decision.

The elements of estoppel are "(1) an admission, statement, or act inconsistent with the claim afterwards asserted and sued upon; (2) action by the other party on the faith of the admission, statement, or act; and (3) injury to such other party, resulting from allowing the first party to contradict or repudiate the admission, statement, or act." *Ryan v. Ford*, 16 S.W.3d 644, 651 (Mo. App. W.D. 2000) (quoting *Farmland Indus., Inc. v. Bittner*, 920 S.W.2d 581, 583 (Mo. App. W.D. 1996)). "Equitable estoppel may run against the state, but only where there are exceptional circumstances and a manifest injustice will result." *Gosal v City of Sedalia*, 291 S.W.3d 822, 828 (Mo. App. W.D. 2009) (quoting *Mo. Gas Energy v. Pub. Serv. Comm'n*, 978 S.W.2d 434, 439 (Mo. App. W.D. 1998)). "Equitable estoppel is not applicable if it will interfere with the proper discharge of governmental duties, curtail the exercise of the state's police powers, or thwart public policy . . . ." *Id.* at 828-29 (quoting *Mo. Gas Energy*, 978 S.W.2d at 439). The issuance of a right-to-sue letter when the conditions of § 213.111.1 have been met is a duty of state government. *Tivol Plaza*, 527 S.W.3d at 839. Thus, equitable estoppel is not applicable here.[14]

Point IV is denied.

---

[14] Moreover, inclusion of boilerplate language about judicial review under § 536.150 in Gustafson's right-to-sue letter does not create a right under that section where none otherwise exists. As discussed *supra*, Bi-State did not adequately allege a cause of action for judicial review under § 536.150.

14

**D. The circuit court did not rely on facts not alleged in Bi-State's Petition.**

For its fifth point, Bi-State alleges that the circuit court erred in granting the MCHR's motion to dismiss because the court improperly relied on facts not alleged in Bi-State's amended petition. Specifically, Bi-State faults the circuit court for relying on what the court described as the "undisputed facts" that: (1) the MCHR had not completed its investigation within 180 days of filing, and (2) Gustafson requested a right-to-sue letter from the MCHR. Bi-State claims that it did not allege either of these facts in its amended petition but merely recited them from the right-to-sue letter.

In reviewing a dismissal for failure to state a claim, we review the petition "in an almost academic manner, to determine if the facts alleged meet the elements of a recognized cause of action." *Jordan*, 561 S.W.3d at 59 (quoting *Henley*, 285 S.W.3d at 329). And, in doing so, we review the entire petition, including all exhibits because "[a]n exhibit to a pleading is a part thereof for all purposes." § 509.130. The MCHR's right-to-sue letter to Gustafson was Exhibit C to Bi-State's amended petition. The letter stated, "This notice of right to sue is being issued as required by Section 213.111.1, RSMo, because it has been requested in writing 180 days after filing of the [2014] complaint. Please note that administrative processing of this complaint, including determination of jurisdiction, has not been completed."[15]

In reviewing the grant of a motion to dismiss for failure to state a claim, we must look at the petition to determine the allegations upon which the petitioner sought relief. Here, Bi-State claimed only that the MCHR acted in excess of its authority or jurisdiction in issuing the right-to-sue letter because: (1) the 2011 Agreement between Bi-State and the MCHR resolved

---

[15] The language in right-to-sue letters about the MCHR having not completed its administrative review was not required by statute. *See Tivol Plaza*, 527 S.W.3d at 844 n.4 ("While not required by statute, we note in both cases the MCHR provided further information to the parties, stating in the right-to-sue letters, the 'administrative processing of this complaint, including determinations of jurisdiction, ha[d] not been completed.'").

Gustafson's 2014 complaint and the MCHR was obligated to follow its own agreement; and (2) Bi-State, an entity created by interstate compact, was not subject to the MHRA. Nowhere in its amended petition did Bi-State claim that the MCHR exceeded its authority in issuing the right-to-sue letter because Gustafson had not requested the letter or that the 180 days had not passed.[16] The trial court did not err in relying on the fact that Gustafson requested a right-to-sue letter where Bi-State failed to allege that no right-to-sue letter was requested and exhibits attached to the amended petition indicated Gustafson did request such a letter 180 days after filing the 2014 complaint.

Similarly, nowhere in its amended petition does Bi-State claim that the MCHR had completed its administrative processing of Gustafson's complaint before the right-to-sue letter was issued, and, as noted *supra*, the exhibits attached to the petition indicated that the administrative process was ongoing. The only fair reading of the amended petition is that Bi-State claimed, as a matter of law, that the MCHR lacked jurisdiction or authority over Gustafson's complaint against Bi-State and thus the MCHR *should* have rejected Gustafson's complaint before issuing a right-to-sue letter. But in *Tivol Plaza*, our Supreme Court expressly rejected the argument that the MCHR is required to determine threshold issues such as jurisdiction before issuing a right-to-sue letter. 527 S.W.3d at 844.

On appeal, Bi-State slightly recasts this argument, suggesting that the MCHR and Warren were aware of both a prior no-probable-cause finding as to some of the allegations in Gustafson's 2014 complaint and the effect of the 2011 settlement agreement on the 2014 complaint; thus, they "had at least completed their administrative processing of the Charges enough to know that issuance of a Notice of Right to Sue . . . was improper." In other words, Bi-State seeks to redefine

---

[16] Nor does Bi-State make either argument on appeal.

what is meant by completion of the administrative process to mean that the process is complete when the MCHR has sufficient information to complete the process. This is just another attempt, in contravention of the holding in *Tivol Plaza*, to impose on the MCHR the duty to resolve threshold issues such as jurisdiction and authority before issuing a right-to-sue letter. In *Tivol Plaza*, in determining whether the MCHR had completed its administrative processing, the court relied on whether "the employees' complaints were still pending." Bi-State does not allege that Gustafson's 2014 complaint was not pending when the right-to-sue letter was issued, and the facts set out in the amended petition and attached exhibits suggest otherwise.

Consistent with *Tivol Plaza*, the circuit court relied on only the facts that (1) Gustafson filed a complaint with the MCHR; (2) Gustafson's complaint was still pending 180 days later; and (3) Gustafson requested a right-to-sue letter. Bi-State's amended petition admits the first two facts and does not dispute the third. *See Bray v. Mo. Dep't of Corr.*, 498 S.W.3d 514, 518 (Mo. App. W.D. 2016) (finding no indication that the motion court made findings of fact contrary to the factual allegations in the petition). And Bi-State's belief as to whether the MCHR had completed its administrative review is not relevant.

The MCHR is required "to issue a right-to-sue letter and terminate all proceedings related to a complaint if 180 days have elapsed and the [complainant] has made a written request for a right-to-sue letter." *Tivol Plaza*, 527 S.W.3d at 839. Thus, the trigger for issuance of a right-to-sue letter is that the complaint is still pending 180 days after it was filed and the complainant requests such a letter. At that point, the "MCHR [loses] authority to continue processing the charges and [i]s required to issue the right-to-sue letter[]," regardless of whether the MCHR has completed its review. *Id.* at 844. In *Tivol Plaza*, the Court stated,

> 180 days had elapsed, and, as discussed above, the MCHR was required to issue the right-to-sue letters to the employees and terminate all proceedings related

> to their complaints pursuant to section 213.111.1. The MCHR was required to do so regardless of where it was in its administrative processing—here the records show, based on language the MCHR chose to include in its letters, it had not yet determined its jurisdiction in either case.

*Id.* at 845. Here, it is clear from Bi-State's amended petition that the 2014 complaint was filed more than 180 days before the right-to-sue letter was issued in November 2015, and that the complaint was still pending when the letter was issued. Thus, it is clear from the amended petition itself that Bi-State failed to state a claim upon which relief can be granted.

Point V is denied.

## Conclusion

Finding that dismissal of all counts of Bi-State's amended petition was appropriate, we affirm the motion court's ruling.

_____
Karen King Mitchell, Chief Judge

Victor C. Howard and Alok Ahuja, Judges, concur.

18